Craven vs. Smith.

CRAVEN, by guardian *ad litem*, Respondent, vs. SMITH, Appellant.

*November 19 — December 11, 1894.*

*Master and servant: Dangerous employment: Injury to minor servant: Negligence of fellow-servant: Assumption of risk: Contributory negligence: Instructions to jury: Evidence: Immaterial error.*

1. The fact that a young and inexperienced employee, though using ordinary care, was injured while engaged in dangerous work of whose perils he had not been warned and was ignorant, does not entitle him to recover, if the injury was solely the result of a co-employee's negligence, or if it was not caused directly by the dangerous character of the work, or if he ought to have comprehended the danger,— that is, if an ordinarily prudent person of his age and experience, under like circumstances, would have appreciated the danger and risk.

2. An employee cannot recover for injuries directly caused or contributed to by his own lack of ordinary care, even though the work he was engaged in was dangerous.

3. In an action for a personal injury the exclusion of evidence that plaintiff had refused to submit to an operation was not prejudicial to defendant, where full evidence was allowed as to whether such operation was practicable or would be beneficial, and the jury were fully instructed, in effect, that no damages could be allowed plaintiff if such an operation could be successfully performed.

APPEAL from a judgment of the circuit court for Walworth county: FRANK M. FISH, Circuit Judge. *Reversed.*

Personal injuries. The plaintiff was employed by the defendant, September 23, 1891 (he being then eleven years of age), in riding a horse attached to a corn cutter in the defendant's field. While so riding the horse ran away, plaintiff was thrown off, fell under the machine, and received deep cuts on the shoulder and over the eye. The complaint charged that the machine was a dangerous one; that the horse attached to it was a vicious horse, to defendant's knowledge, and that the appliances furnished for managing and riding the horse were insufficient; and that the defendant was negligent in not informing or cautioning the plaintiff as to the dangerous character of the machine and the service. The answer, while admitting the plaintiff's injury, denied all negligence on the part of the defendant, and alleged contributory negligence on the part of the plaintiff.

It appears that the machine which inflicted the injury consists of a V-shaped platform, on runners like a sled, with sharp knives projecting outward along the wings or sides of the platform, so that, a horse being hitched to the apex of the platform and drawing the same between two rows of corn, the knives came against the rows of corn upon each side and cut them. When in operation, a man stands on each wing and gathers the corn in his arms as fast as it is cut, until an armful is gathered, when the horse is stopped and the men get off the machine with the corn in their arms and set it up. The men then get on the machine again, the horse is started, and the same process repeated.

At the time of the accident, Charles Hare and Homer Smith were riding and operating the machine, and the plaintiff was riding the horse. The testimony shows without dispute that the horse had run away several times, to the defendant's knowledge, within the preceding two or three years, but there was also testimony that the horse was gentle when driven single. The plaintiff had little or no experience in riding horses, and had never seen this work done prior to the morning of his injury. The horse was harnessed on the morning of the accident by Charles Hare, who testifies that the defendant helped him in harnessing the horse. There was no saddle upon the horse, but a loose blanket placed upon his back for the rider. The defendant does not deny assisting in the harnessing of the horse, but says he might have done so but does not recollect. The defendant was not present when the plaintiff got on the horse. He was put on by Hare and Homer Smith. Plaintiff himself testifies that no instructions or cautions were given him when he mounted the horse or at any time. The only testimony as to any instruction or caution was that of Homer Smith, who testified that the plaintiff held the lines very loosely, and that he told the plaintiff to take hold further up on the lines, and keep an ordinary snug rein upon the horse when he stopped. The plaintiff testified that he was carrying a long flat file, which Homer Smith gave to him to carry. This file was used to sharpen the knives upon the machine. It appears that they had gone once or twice across the field in safety when the accident happened. Just after Hare and Smith had got off the machine to set up the corn, and were about to get on the machine and start again, the horse started, without apparent cause, slowly at first, and then on a run, and ran the whole length of the field. At the end of the field the horse turned, and the plaintiff was thrown off and injured by the knives of the machine, as before stated. There was evidence that both the arm and the eye were permanently and seriously injured.

So far as necessary to understand the questions raised upon the judge's charge to the jury, the instructions are as follows, the portions excepted to being in italics: "It is now clearly settled that if a master employs a servant to do work in a dangerous place, or when the mode of doing the work is dangerous and apparent to a person of capacity and knowledge of the subject, yet, if the servant employed to do work of such a dangerous character or in a dangerous place, from youth, inexperience, ignorance, or want of general capacity, may fail to appreciate the dangers, it is a breach of duty on the part of the master to expose a servant of such character, even with his own consent, to such dangers, unless he first gives him such instructions or cautions as will enable him to comprehend them and do his work safely with proper care on his part. *In applying this principle of law to this case, you will first determine from all the evidence in the case whether the work which was required of the plaintiff was dangerous; and in considering this branch of the case you may take into consideration the evidence bearing upon the character of the work engaged in by the parties, the testimony as to the character of the horse, and as to the machine which was attached to the horse, and the nature of the work to be done, the appliances, if any, which were furnished for riding the horse, and all the other facts and circumstances appearing in the evidence.* If you find from the evidence that the work required of the plaintiff was dangerous, then the law imposed upon the defendant, *Smith,* the duty of giving to the plaintiff such instructions or cautions as would enable him to comprehend the danger and to do his work safely with proper care upon his part; and the notice which the defendant was bound to give to the plaintiff, of the nature of the risks incident to the service which he undertook, must be such as to enable an ordinary person of his youth and inexperience in the business intelligently to appreciate the nature of the danger attending its performance. *The question, indeed, on this branch of the case, is*

*not of due care on the part of the plaintiff, but whether the cause of the injury was one of which he knowingly assumed the risk, or one of which, by reason of his incapacity to understand and appreciate its character, or the neglect of the defendant to take due precautions to effectually inform him thereof;* but, in determining this question, it is proper to take into consideration not only the plaintiff's youth and his inexperience, if any, but also the nature of the service which he was to perform, and the degree to which his attention while at work would need to be devoted to its performance. If you find from the evidence that Charles Topping was told by the plaintiff's mother that the plaintiff was inexperienced in riding horses, the defendant was chargeable with such knowledge. *If, after reviewing all the credible evidence, facts, and circumstances proven on the trial, you are satisfied that the work in which he was employed was dangerous, and that, from his age, inexperience, or want of information, he did not comprehend the danger, if any, attendant upon his employment, then the plaintiff, if in the exercise of ordinary care, is entitled to recover in this action, although the injury was the result of the negligence of Charles Hare or Homer Smith or both of them.* If, however, you are satisfied from the credible evidence that the work was not dangerous in itself, you will then consider the facts in this case with reference to another general proposition of law, and that is that a master is bound to furnish the employee with reasonable, safe, proper appliances for doing and performing his work; and if he fails so to do he is liable for all injuries arising to the employee, exercising ordinary care, from the lack of such appliances, unless it appears that the employee knew, or could have known by the exercise of ordinary care and prudence, that the doing of such work without such appliances was dangerous. In such case he is held to have assumed such increased risk, if any; *and you will therefore inquire, if you find the work was not dan-*

*gerous, whether the defendant furnished the plaintiff with proper appliances for riding such horse; and if he did not, and the injury arose by reason of the absence of such proper appliances, then the plaintiff is entitled to recover, unless you find, under the rules I have given you, that he is chargeable with having assumed that extra hazard.* If he knew that it was more hazardous to ride the animal without proper appliances, or if an ordinary youth of his age would have known such fact, or he could have known it by the exercise of ordinary prudence, and he voluntarily rode the animal without such appliances, he is held to have assumed the risk, and cannot recover. These questions are to be considered only if you find that the work was dangerous and that plaintiff did not comprehend the danger. *If you find from the evidence that the work was not dangerous, you will then inquire whether the plaintiff was in the exercise of ordinary care and prudence. Ordinary care and prudence is that care and prudence which ordinary youths of his age exercise under like circumstances and conditions. If the work was not dangerous, and the plaintiff was not in the exercise of ordinary care, you will find for the defendant. Again, if you find the work was not dangerous, you will then determine from the evidence whether the accident arose by reason of the negligence of Charles Hare and Homer Smith. Remember, gentlemen, that this question does not arise in this case if you find that the work was dangerous and that the plaintiff did not comprehend the danger. You are to consider this question only if you should find the reverse of the above proposition.* If, however, you reach the question, and you find, from all the credible evidence, facts, and circumstances in the case, that the accident arose by reason of the negligence of Charles Hare and Homer Smith, or either of them, you will find for the defendant."

A general verdict for the plaintiff was rendered, and from judgment thereon defendant appeals.

For the appellant there was a brief by *A. S. Spooner*, attorney, and *Spooner, Sanborn, Kerr & Spooner*, of counsel, and the cause was argued orally by *J. B. Kerr* and *A. L. Sanborn*.

For the respondent there was a brief by *D. B. Barnes*, and oral argument by *Mr. Barnes* and *Mr. J. B. Simmons*.

WINSLOW, J. It has seemed necessary to set forth the charge of the court somewhat at length, in order to appreciate the significance of the errors claimed in it. The serious difficulties with the charge are not in the statement of general principles of law, but in their application to the case in hand. We see no good ground of complaint against the first part of the charge, which discusses the master's duty to warn and instruct a young and inexperienced employee who is set to work upon a dangerous machine, although the second sentence excepted to is manifestly incomplete, evidently by inadvertence; but when, in the third sentence excepted to, the trial judge proceeds to state under what circumstances the plaintiff may recover, we think there is manifest and prejudicial error. Here it is stated substantially that if the work was dangerous and the plaintiff, on account of his youth and inexperience, did not comprehend the danger, then, if he was exercising ordinary care, he may recover, though the injury was the result of the negligence of co-employees. This statement is erroneous both in what it states and in what it does not state. It states that a recovery may be had, even though the injury was the result (plainly meaning the sole result) of a co-employee's negligence. This is not the law. Undoubtedly, a recovery may be had against the master for injuries resulting in part from his negligence and in part from the negligence of a co-employee. *Sherman v. Menominee R. L. Co.* 72 Wis. 122. But if the injury was solely the result of the co-employee's negligence, the master is not liable.

Craven vs. Smith.

Again, the instruction says, in effect: Given a dangerous machine, an uninstructed, inexperienced employee, not comprehending the danger, but using ordinary care, and an injury to the employee, a recovery must follow. There is another necessary element which is not stated, and that is that the injury must have been directly caused by the dangerous character of the machine or employment. This factor was omitted, and it is a necessary factor, because it does not follow necessarily from the happening of an injury in the use of a dangerous machine that the dangerous character of the machine caused the injury. It may have been a pure accident, for which no one is responsible. Again, it is not strictly accurate to acquit an employee using a dangerous machine of assumption of the risk simply because he did not comprehend the danger. The true test is whether he ought to have comprehended it; that is, whether an ordinarily prudent person of his age and experience, under like circumstances, would have appreciated the danger and risk. *Luebke v. Berlin Machine Works*, 88 Wis. 442.

The next exception to the charge is also well taken. Here the court says, in substance, that if the defendant did not furnish the plaintiff proper appliances for riding the horse, and the injury arose from such failure, then the plaintiff should recover unless he is chargeable with assumption of the hazard. This omits the element of ordinary care on the part of the plaintiff, and leaves the jury at liberty to find a verdict for the plaintiff, although they may be satisfied that the injury was directly caused or contributed to by the plaintiff's lack of ordinary care. This error is emphasized by what is said in a following paragraph, where the jury are told that, if they find the work was not dangerous, they are then to inquire whether the plaintiff was exercising ordinary care, which is plainly calculated to lead the jury to think that this question does not arise in case they find the occupation a dangerous one. Of course, the question whether

plaintiff was exercising ordinary care is present, whether the
occupation was dangerous or not.

The charge is also objectionable where it states that the
question whether the accident was caused by the negligence
of the co-employee only arises in case they find the work
was not dangerous. What has before been said as to the
effect of the negligence of co-employees is here applicable.

There was evidence offered and excluded to the effect that
a year or so after the accident, when the injury over the
eye had completely healed, a physician proposed to perform
an operation, by which he thought the use of the eye could
be measurably benefited, and the plaintiff and his mother
refused to allow it to be performed. Full evidence was
allowed by physicians, pro and con, as to whether such an
operation was practicable or would be beneficial, and the
jury were fully instructed, in effect, that no damages could
be allowed plaintiff if such an operation could be success-
fully performed. Under these circumstances, we see noth-
ing prejudicial to the defendant in the ruling.

*By the Court.*— Judgment reversed, and action remanded
for a new trial.