MUENCHOW, Administrator, Respondent, vs. THE THEO. ZSCHETZSCHE & SON COMPANY, Appellant.

*January 9—January 28, 1902.*

*Master and servant: Unguarded machinery: Assumption of risk: Appeal: Correcting special verdict: Practice.*

1. A workman of ordinary intelligence, mature years, and considerable experience with machinery, who continues to work in close proximity to a rapidly revolving unguarded shaft with knowledge of its location, assumes the risk of injury therefrom.
2. Where an answer of a special verdict is unsupported by the evidence, the supreme court on appeal cannot direct the trial court to correct the verdict and render judgment accordingly unless a motion to that effect was made in the trial court, but must reverse the judgment and remand the cause for a new trial.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

December 9, 1896, William Muenchow was an employee of the defendant in a tannery. His work was piling hides on a press and operating the press by means of machinery. Over the press and near where Muenchow was obliged to stand while at his work, and in dangerous proximity to him, was a revolving iron shaft. No instruction was given him regarding the dangers to be apprehended therefrom while in the performance of his duties. In some way he came in contact with the shaft and was wound about it and killed. His personal representative, duly appointed by the proper probate court, brought this action, stating as grounds for relief the above facts, and that Muenchow was not aware of the dangerous character of his work. The defense insisted upon, in the main, was assumption of the risk by Muenchow.

The evidence was to the following effect: The bed of the press was about fifteen feet long by six feet wide. It was on wheels, the upper surface thereof being a few inches above

the floor. The press was so arranged that it could be readily moved on a track back and forth under a line shaft located about five and one-half feet above the foundation thereof. It was the duty of the press tender to pile hides on one end thereof, making a stack about five feet square and high enough to come up to within a few inches of the line shaft, then to place the press in position under the following-head and cause it to descend upon the stack by power transmitted from the shaft by a belt. While one stack of hides was in process of being pressed, the tender was required to make another on the opposite end of the press. His work brought him frequently so near the shaft that it was necessary to exercise considerable care to avoid coming in contact therewith. Hides were liable to be caught by the shaft and wound up thereon. Muenchow was familiar with loading and operating the press, though it was not his regular work. He was assigned to that duty on the day in question because of the absence of the regular press tender. The shaft was about two and one-half inches in diameter, and speeded at about ninety revolutions per minute. The stack of hides was constructed ready to be pressed, by laying them lengthways with the shaft. When the pile was built nearly to its proper height, it was necessary to slide the hides under the shaft, the tender standing on the bed of the press, or to pile them first on the one side, then on the other. Muenchow had worked in the tannery about three years. He was an intelligent man who could be put to different kinds of work. He was perfectly familiar with the shaft in question, having been accustomed to oil the bearings thereof. The shaft might easily have been guarded so as to remove all danger of injuring the press tender. Muenchow was not warned in any way of the danger to be apprehended from the shaft. While at his work he became in some way attached to the shaft, wound up on it and killed. When his body was taken from the shaft a hide was found wound around it therewith.

The jury rendered a special verdict consisting of fifteen questions. Omitting those which are unnecessary because they relate to undisputed facts, and those which are mere duplicates, and stating the rest in substance, we have the following as the verdict of the jury:

(1) Was Muenchow's working place, by reason of the unguarded shaft, not reasonably safe? *A.* Yes.

(2) Was the dangerous character of Muenchow's working place the proximate cause of his death? *A.* Yes.

(3) Could a person of ordinary intelligence, possessed of the knowledge and experience of Muenchow, reasonably have seen and understood the danger incident to the working place in question caused by the unguarded shaft? *A.* No.

(4) What amount of money will compensate the widow of the deceased for the pecuniary loss she sustained by reason of his death? *A.* $2,200.

Defendant's counsel moved the court for judgment notwithstanding the verdict, which was denied. They also moved the court for an order setting aside the verdict and granting a new trial for various reasons, and among them because the verdict was contrary to the evidence, which motion was denied. Judgment was rendered in plaintiff's favor.

For the appellant there was a brief by *Benfey & Benfey,* and oral argument by *Theo. Benfey.* To the point that the deceased assumed the risk they cited, besides cases cited in the opinion, *Showalter v. Fairbanks, M. & Co.* 88 Wis. 376, 381; *Peterson v. Sherry L. Co.* 90 Wis. 83, 93; *Casey v. C., St. P., M. & O. R. Co.* 90 Wis. 113; *Sladky v. Marinette L. Co.* 107 Wis. 250, 261, and cases cited; *Mielke v. C. & N. W. R. Co.* 103 Wis. 1–5; *Rooney v. Sewall & Day C. Co.* 161 Mass. 153; *Johnson v. Ashland W. Co.* 77 Wis. 51; *Hazen v. West Superior L. Co.* 91 Wis. 208–211; *Dahlke v. Illinois S. Co.* 100 Wis. 431, 435.

For the respondent there was a brief by *C. A. Dean,* and oral argument by *Simon Gillen.*

MARSHALL, J. The all-important question for decision in this case is, Does the evidence conclusively show that the deceased assumed the risk of being injured by the unguarded shaft? If that question must be decided in the affirmative, the trial court erred in not granting a nonsuit as asked for by appellant's counsel, and we need not consider any assignment of error except the one involving that subject, since there is no reasonable probability, from anything appearing in the record, that the situation can be made to appear more favorable for respondent upon another trial. As indicated in the statement of facts, the deceased was a man of ordinary intelligence, of mature years, and considerable experience with machinery. He knew the location of the revolving shaft. It was right before his eyes almost constantly when he was about his work. It was a part of the machinery used by him in the performance of his duties. Is it reasonable to say that such a person, so circumstanced, is not chargeable with knowledge that if he allows his clothing to come in contact with the revolving shaft he will be liable to receive a personal injury? That is the question.

It seems that the proposition suggested will admit of but one answer. It is quite as well known that it is dangerous to allow one's clothing to come in contact with a small, rapidly revolving shaft as it is that fire is liable to burn anything of a combustible character with which it comes in contact. Every person of average intelligence and experience in life learns of such dangers even before coming to years of maturity. To say that a person of mature years and ordinary intelligence and experience does not, ordinarily, possess such knowledge, is to assert, as it seems, that which is inconsistent with reason and common sense. In that view, the verdict of the jury that the deceased was not

chargeable with knowledge of the dangers of his working place by reason of the unguarded shaft, does not make it so. Where there is room in evidentiary facts for conflicting inferences, it is the province of the jury to say which is the proper inference to be drawn therefrom. They are supreme in that field in a legal action; but when there is but one reasonable inference to be drawn from such facts, a contrary inference should not be suggested by submitting the question involved to the jury for decision, nor should such contrary inference, if found by them, be allowed to disturb the course of justice. A proposition which is indisputable upon any reasonable ground is not a proper subject for investigation by a jury, nor is the truth thereof dimmed at all because condemned by the verdict of a jury. *Finkelston v. C., M. & St. P. R. Co.* 94 Wis. 270; *Cawley v. La Crosse City R. Co.* 101 Wis. 145; *Optenberg v. Skelton,* 109 Wis. 241.

It would seem that the conclusion above indicated, as to whether the deceased ought to have apprehended the danger of his being injured by the shaft, need not be supported by precedents. However, we might point to many analogous cases decided by this court, and cases involving the precise question here involved, decided by other courts, all in harmony with such conclusion, some of which cases are cited in appellant's brief. In *Dougherty v. West Superior I. & S. Co.* 88 Wis. 343, the plaintiff was injured by allowing his hand to become entangled in hay which he was manipulating to cause it to wind around a rapidly revolving spindle, by reason whereof his hand was drawn to the spindle and injured. He claimed that he did not know the danger of such an occurrence taking place, and that he should have been instructed in that regard by his employer. This court said that whatever danger existed "was plain and open to observation upon the most casual inspection." "It was certainly not necessary to tell him [the employee] that, if he allowed his hand to be caught in the hay just where it was

being wound around the spindle, there was danger that it would be seriously injured. Common sense would suggest that from the condition of affairs open to his observation." In support of that conclusion *Russell v. Tillotson,* 140 Mass. 201, was cited. The facts thereof were that an employee allowed his apron and jacket to come in contact with an overhead revolving shaft, which was in plain sight and was seen by him, whereby he was injured. It was claimed, in his action for damages against his employer, that he did not know of the danger and should not have been sent to work in the region thereof without instructions. On appeal from a judgment upon a verdict directed for the defendant, the judgment was affirmed, the court saying:

"As it is not suggested that he was a man of manifest imbecility, we think that the foreman was entitled to assume that the plaintiff would protect himself by whatever precautions were necessary."

In *Kreider v. Wisconsin River P. & P. Co.* 110 Wis. 645, the facts were that the plaintiff allowed his clothing to come in contact with a revolving shaft in which there was a set screw, whereby he was injured. A nonsuit was granted by the trial court upon the ground that the plaintiff assumed the risk of being injured by the shaft and set screw, the danger in that regard being obvious. In *Helmke v. Thilmany,* 107 Wis. 216, an employee allowed his coat to be caught in some unguarded gears which were in plain sight and with which he was familiar, whereby he was injured. A judgment of nonsuit was affirmed. In *Lemoine v. Aldrich,* 177 Mass. 89, the facts were that an employee, whose duty required him to frequently pass under a revolving shaft, so located that care was required by him to prevent a sheet, used about his work and carried on his arm while passing under the shaft, from being caught and wound up on it, and drawing him thereto and injuring him, was so caught and injured, and he claimed, in an action for damages against

his employer, that he should have been warned of the danger. A judgment for defendant was affirmed, the court saying the plaintiff was twenty-one years of age and the defendant had no reason to suppose that he needed warning of the danger. *Ford v. Mount Tom S. P. Co.* 172 Mass. 544, is to the same effect.

The conclusion reached is that the deceased must be held to have assumed the risk of being injured by the shaft, and that the record discloses no ground for the recovery adjudged. Had a proper motion been made in the court below for a correction of the verdict in accordance with the undisputed evidence, by striking out the answers unfavorable to appellant and inserting in place thereof answers in its favor, on the subject of whether the danger incident to the deceased's working place, by reason of the unguarded shaft, was open and obvious to a person of ordinary intelligence and experience, the settled practice would allow us to reverse the judgment appealed from and remand the cause with directions to make such correction and render a judgment dismissing the complaint with costs. As no such motion was made, the judgment must be reversed and the cause remanded for a new trial.

*By the Court.*—The judgment is reversed and the cause remanded for a new trial.