UPTHEGROVE, by guardian *ad litem,* Respondent, vs. JONES & ADAMS COAL COMPANY, Appellant.

*March 25—September 8, 1903.*

*Master and servant: Minors: Personal injuries: Negligence: Knowledge of danger: Assumption of risk: Contributory negligence.*

1. Where a minor servant, under the circumstances of his employment, ought to have known and comprehended an apparent danger, he assumes the risks incident to his employment.
2. In an action by a minor servant for personal injuries received in the course of his employment, the evidence, stated by the court, examined and *held* to show such failure to exercise ordinary care as to constitute contributory negligence.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This action was commenced May 31, 1902, to recover damages for personal injuries sustained by the plaintiff July 20, 1900, while in the employ of the defendant as fireman on two small engines used in connection with derricks in hoisting coal from the boats to the defendant's coal dock in Ashland.

Issue being joined and trial had, the jury, at the close of the trial, returned a special verdict to the effect (3) that the plaintiff was injured while engaged in operating the injector and cold-air valve on the defendant's derrick, (4) under the defendant's direction, (5) at a place unnecessarily dangerous to the defendant's employees; (6) that the uncovered gearing in which the plaintiff was injured was so located as to be dangerous to such employees while in the performance of their duties; (7) that the plaintiff, in the exercise of ordinary care, ought not to have known that the cogwheels meshed downward at the time of the injury; (8) that the plaintiff had not sufficient experience in the business in which he was engaged to comprehend the dangers incident to such work or employment; (9) that he had not been sufficiently instructed or cautioned by the defendant to enable him to comprehend and understand such danger before the accident; (10) that the plaintiff was in the exercise of such care at the time of the accident as an ordinarily prudent and careful person of the same age, understanding, and experience would have used; (11) that the defendant was guilty of negligence in operating its machinery in its then condition at the place where the plaintiff was injured; (12) that such negligence was the proximate cause of such injury; (13) that they assessed the plaintiff's damages at $3,600. From the judgment entered upon such verdict for the amount stated and costs, the defendant brings this appeal.

The facts are practically undisputed, and to the effect that the plaintiff was eighteen and one-half years of age at the time he was injured, and had just finished his junior year in the high school; that he was five feet seven inches in height, and weighed about 145 pounds at the time of the trial; that he had been a fireman off and on in a steam-heating plant for several years; that he had worked for the defendant forty days the previous season at the same kind of work that he was doing when injured—firing engines used in operating coal

derricks—and had worked for the defendant for twenty days immediately before he was injured; that the hoisting machinery used in connection with each of the derricks was in a little room twelve feet long and eight feet wide, with a roof ten feet high at the back end and fourteen feet high at the front end, and that the front end was entirely open and the other three sides inclosed without windows; that in this room there were several gears and considerable other machinery; the gearing in which the plaintiff's hand was caught drove all the machinery in that derrick; that when a bucket of coal was hoisted to the proper height the derrick swung around, the little house and all of the machinery going with it, and when the coal was dumped the whole thing swung back; that it took about thirty seconds to swing the derrick half way around in this manner; that a person on the derrick, not accustomed to the motion, would have to hang on to something to preserve his balance; that a derrick hoists twenty-five or thirty buckets an hour, and the engine and hoisting machinery stop and start from twenty to one hundred and eighty times an hour; that the plaintiff was injured about twenty minutes after five o'clock in the afternoon of July 20, 1900, while operating a cold-air valve with a loose wheel on a pin, which wheel was about six inches above beveled-geared cogs meshing downward; that the diameter of the cogwheels was twelve inches and the diameter of the little wheel on the valve was three inches; that such machinery was located in a derrick used for hoisting coal from boats to the dock; that there were four such derricks, and the plaintiff was hurt on one of them; that these derricks were about ten feet above the dock, situated on trestles with four wheels on each derrick, which ran on tracks about fifteen feet apart; that there was a platform about two and one half feet above this beveled gear, and a chair on the top of this platform, in which the engineer sat; that on the right-hand side of this cold-air valve, facing the opening in the building, was located a big drum, on which

the wire cable coiled; that on the left-hand side was located
the wooden platform, laid over with boards, upon which was
a chair where the engineer sat; that the cog gearing was about
eight feet back from the open end of the building; that the
plaintiff's duties were to keep up fire, keep water in the
boiler, sweep out and oil the machinery; that he had to do
such work in two of the derricks, including the one on which
he was injured; that the boxes and shafts he oiled every
morning, some times at noon; that he handed the oil can to
the engineer, and he oiled the cogs or gearing from where he
sat; that the engineer told the plaintiff to put some grease on
this gear with a stick, and he did, but did not put on enough,
and so the engineer took the stick and put on more; that the
place where the plaintiff oiled the shafts was from four to
five feet from this cold-air valve; that while the plaintiff was
putting on the grease the machinery was stationary; that he
only did that once; that he used the injectors at the boiler
twenty or thirty times a day; that he only used the cold-air
valve three or four times prior to the time he was hurt; that
the cold-air valve was only used when the injectors would not
work; that the wheel on this valve was loose; that in opening
the cold-air valve it was necessary to take the wheel off the
nail where it hung, and put it on the pin, and then open the
valve a little, and, just as soon as the air started sucking, shut
off the cold-air valve again, and then, if it did not suck so the
water could be heard running, to shut off the cold-air valve
again with a quick jerk; that such was the way the engineer
showed the plaintiff how to work the valve; that while work-
ing the cold-air valve it was necessary to watch the steam
gauge on the boiler, so that the noise of the water would be
heard, and it would be known to be going all right; that the
plaintiff knew where to oil the machinery without being in-
structed; that he swept occasionally the year before; that the
plaintiff asked for this job in the season of 1900, and re-
ceived a man's wages for his work; that he knew of the ex-

istence and of the exact location of this gearing some time be-
fore he was caught in it, having greased and assisted in greas-
ing and oiling it before that time; that he had seen the de-
fendant's employees take the gearing apart; that from the
place where the plaintiff stood when he was injured the gear-
ing could be plainly seen; that he understood that, if he got
his hand in the gearing, it would be crushed; that he knew
that, if he got his hand in this particular gearing, it would
be crushed; that he knew that, if he got his hand between two
cog wheels, it would be crushed; that he knew that the little
wheel which slipped off the spindle and let his hand drop into
the gearing was not fastened to the spindle; that he himself
had chiseled out the eye of another wheel to make it fit on the
spindle, and it was the slipping of this wheel from the spindle
that caused the accident.

The plaintiff testified to the manner in which he was in-
jured to the effect that at the time he was injured he was
trying to make the cold-air valve work; that he had been
down on the track below the derrick, and got up in the der-
rick, and thought it was about time to put some water in the
boiler, and so he looked at the gauge and saw it needed water,
and then he tried to run it through the injector, and the in-
jector was bucking; that he did not know what was the mat-
ter with it, and so he went over and tried to turn on the cold-
air valve; that he left the two valves that were at the boiler,
and went round on the left-hand side of the engine, and
walked round in front and stepped in under the big arm that
goes into the derrick; that there was an iron rod that ran out
about three feet from the platform; that he walked in front
of the engineer, and stepped over that rod into the little place
about a foot and a half square, situated about six inches from
the cogwheels into which the cogs of the drum mesh; that
when he reached that place he took the little wheel off the nail
and put it on to the pin, and then turned it once, and it
started sucking, and then he shut it off, and the injector then

would not work and he kept on turning it; that there was something the matter with it, it would not work, and he kept on turning it, and finally the wheel came off the pin and his hand dropped down and went into the gearing and he was injured; that the machinery was stationary when he went in there; that in going in he passed right in front of the engineer, within a foot of him; that he did not know when the machinery started up; that he did not know that the machinery had started up until he was injured; that he did not have any previous knowledge as to which way the cog wheels meshed; that he did not understand that there was any danger in operating that cold-air valve in the way it was operated; that he did not realize any danger himself, and the engineer had never cautioned or spoken to him about it; no one had cautioned him about any danger; that the gearing on which the plaintiff was injured was uncovered, and could have been covered so as not to interfere with the working of the machine.

For the appellant there was a brief by *Lamoreux & Shea,* and oral argument by *W. F. Shea.*

*A. W. Sanborn,* for the respondent.

CASSODAY, C. J.    Four errors are assigned upon which we are asked to reverse the judgment in this case.    The one particularly relied upon is the refusal of the court to grant a nonsuit or direct a verdict in favor of the defendant.    This is based upon the ground that it appears from the undisputed evidence that the plaintiff assumed the risk and was guilty of contributory negligence.    Counsel for the plaintiff insists that that is the only debatable question presented on this appeal.    He, moreover, concedes that, if that question is decided adversely to the plaintiff, then that the judgment should be reversed, with directions to dismiss the complaint. The facts upon which the respective parties base their contentions are presented in the foregoing statement.    They need

not be here repeated. The age and experience of the plaintiff with the machinery of that kind was such as not to require further instruction than was in fact given as to the danger of getting his hand into the cogwheels while running. In that respect he must be held to the same responsibility as a man of mature years. He testified to the effect that he knew, if he got his hand in this particular gearing, it would be crushed; that, if he got his hand between the two cogwheels, it would be crushed; that he understood that, if he got his hand in the gearing, it would be crushed; that he had seen the defendant's employees take the gearing apart; that he knew of the existence and of the exact location of this gearing for some time before he was caught in it; that from the place where he stood when he was hurt such gearing could be plainly seen; that he was injured while operating the cold-air valve with a loose wheel on a pin which wheel was three inches in diameter and about six inches above the beveled-geared cogs meshing downward; that the cold-air valve was only used when the injectors would not work; that he had only used it three or four times prior to the injury; that the wheel on this valve was loose, and it was necessary to take it off the nail where it hung and put it onto the pin, and then turn it back and forth; that the engineer had showed him how to work the valve. He necessarily knew that the little wheel was not fastened to the spindle, and was liable to slip off; and he testified that when the wheel came off the pin his hand dropped down and went into the gearing, and he was injured. True, the plaintiff testified that he did not know that the cogwheels meshed downward, nor just when the cogwheels started. But they were liable to start at any time.

"This court has repeatedly held that the true test as to whether a minor has assumed the ordinary risks of his employment, or is guilty of contributory negligence, is not whether he in fact knew and comprehended the danger, but whether, under the circumstances, he ought to have known and comprehended such danger. *Luebke v. Berlin M. Works,*

88 Wis. 442, 60 N. W. 711; *Craven v. Smith,* 89 Wis. 126,
61 N. W. 317; *Casey v. C., St. P., M. & O. R. Co.* 90 Wis.
113, 62 N. W. 624; *Herold v. Pfister,* 92 Wis. 417, 66 N. W.
355; *Klatt v. N. C. Foster L. Co.* 92 Wis. 622, 627, 66 N. W.
791; *Roth v. S. E. Barrett Mfg. Co.* 96 Wis. 615, 71 N. W.
1034; *Larson v. Knapp, Stout & Co. Co.* 98 Wis. 178, 73
N. W. 992.

It has also been repeatedly held:

"Where it appears from the undisputed evidence that the
defect or danger is open and obvious, and such as, under the
circumstances, ought to have been known and comprehended
by the plaintiff, then he will be held to have assumed the risk
as a matter of law." *Helmke v. Thilmany,* 107 Wis. 216,
224, 83 N. W. 360, 363. See, also, *Sladky v. Marinette L.
Co.* 107 Wis. 250, 261, 263, 83 N. W. 514; *Kreider v. Wis-
consin River P. & P. Co.* 110 Wis. 645, 659, 86 N. W. 662;
*Muenchow v. Zschetzsche & Son Co.* 113 Wis. 8, 88 N. W.
909.

After careful consideration we are forced to the conclusion
that the admitted facts bring the case within the rule stated.
The little wheel was small, but the plaintiff necessarily knew
that, unless he resisted the tendency, its weight was sufficient
to bear his hand downward while putting it on or taking it
off the pin. His failure to exercise ordinary care in that re-
spect was contributory negligence. The view we have thus
taken of the case makes it unnecessary to consider other ques-
tions presented in the brief of counsel for the defendant. We
must hold that the answers to the seventh, eighth, ninth, and
tenth questions are contrary to the undisputed evidence, and
that the trial court should have granted the motion of the de-
fendant to change the answers to the first three of those ques-
tions from the negative to the affirmative, and to change the
answer of the tenth question from the affirmative to the nega-
tive, and, when so changed, to render judgment thereon in
favor of the defendant and against the plaintiff, dismissing
the complaint, and for costs. This is in accordance with the
repeated rulings of this court. *Stafford v. Chippewa Valley*

*E.'R. Co.* 110 Wis. 331, 362, 85 N. W. 1036, and cases there cited; *Zahn v. M. & S. R. Co.* 114 Wis. 38, 43, 89 N. W. 889; and cases there cited.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded, with directions to change the verdict as indicated, and, when so changed, enter judgment thereon in favor of the defendant and against the plaintiff, as mentioned.

SIEBECKER, J., took no part.