SCHMITT, by guardian *ad litem,* Respondent, vs. HAMILTON MANUFACTURING COMPANY, Appellant.

*February 22—March 10, 1908.*

*Master and servant: Assumption of risk: Evidence: Sufficiency: Employee's negligence: Waiver of technical exceptions.*

1. An employee assumes the risk of those perils which obviously attend the conduct of his work with its usual accompaniments and incidents, and a jury is not at liberty to credit his statement of ignorance of those facts which are obvious to his senses or of those perils which are at once apparent upon the application of such reason and intelligence as he has.

2. In an action by plaintiff to recover damages for injuries to his hand, caused by coming in contact with the revolving knives of a wood-shaping machine, the evidence as to whether plaintiff so completely knew and understood the risk that he assumed it, and whether his act in placing his hands so that an accidental slip might produce contact with the knives was negligent, is examined, and, taken in connection with the positive assurance from defendant's foreman that there was no danger and that the knives were so set that plaintiff's hands would not come in contact with them, is *held* to justify the finding of the jury in favor of plaintiff.

3. An employer who misleads his employee into a disbelief in existing perils incident to the employment, of which the employer had knowledge, and then exposes him to them under such delusion of safety, is guilty of a much plainer failure of duty to him than any mere omission of warnings or instructions, and such conduct will suffice to support a jury's finding of employer's negligence.

4. Exceptions reserved on technical grounds to the form of certain questions in a special verdict will not be considered on appeal where appellant's counsel requests that no reversal of the judgment be had on such grounds, which would only have the effect to impose the expense of another trial, and with but little likelihood that the correction of any such error would lead to a different result.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

The plaintiff, when injured, as hereinafter stated, was nineteen years of age, well educated, intelligent, having had several years of employment which brought him in contact with wood-working machinery of various kinds, and fully appreciated that, when an appliance in a machine served to cut or shape a board pressed against it, it would injure his fingers if they got to the spot where the board was operated on. He knew what a shaper machine was for, namely, to form or shape the edge of a board, and that was accomplished by revolving knives. He had heard that such a machine was dangerous, and had been reluctant to work upon the machine in question at the only time when employed to do so by himself for that reason, but claimed that he was induced to do so by the assurance that the knives which trimmed the edges of the board were all below the upper surface of that board so that his hands, being on top of the board, could not be injured. He testified that he had never observed the mechanism of the shaper or the place or arrangement of the knives when they were stationary so that he could see them. On May 25, 1896, he was called on to aid his boss in propelling through the shaper a four-foot-wide board, seven eighths of an inch thick, in order to shape the edge thereof. This was done by a pair of revolving knives resembling chisels, projecting horizontally from the circular head of a vertical spindle about three inches in diameter, which revolved above the surface of a plane table on which the board was pushed. They revolved at the velocity of 6,500 revolutions a minute, so that the knives as such were not perceptible, but appeared as a bright rim or blur around the outside of the head of the spindle. As matter of fact these knives were over two inches wide, and only the lower portion of them was used in giving the shape to the board's edge; the upper portion of them, which was more protrusive, being above the upper surface of the board and protruded inward over the edge some three quarters of an inch. The

plaintiff's duty was to place his hands upon the upper surface of this board and push it forward so that the right side of it passed along these knives.   Considerable exertion of force was necessary to propel it.   The board, about seven feet long, had been propelled so far that all except the last seven or eight inches had been shaped, at which time the plaintiff's right hand slipped and was thrust against the revolving knives, a movement of two or three inches being sufficient.   The hand was badly mangled.   The jury found by special verdict (1) that the fact that the knives extended above the upper surface of the board made the work which plaintiff was then doing dangerous to a person of his age, experience, discretion, and judgment; (2) that he did not know that the knives so extended before he was injured; (3) that the exercise of ordinary care on his part would not have disclosed to him before he was injured the fact that the knives so extended above the face of the board; (4) that defendant failed to warn or instruct plaintiff as to the danger incident to his work at the machine arising from the extension of the knives aforesaid; (5) that by such failure to warn defendant was guilty of negligence; (6) that the injury was the natural and probable consequence of such negligence; (7) that defendant in the exercise of ordinary intelligence and prudence under the circumstances ought reasonably to have foreseen that such negligence would be likely to result in personal injury to the plaintiff; (8) that the plaintiff was not guilty of any failure to exercise ordinary care which contributed to causing injury; and (9) damages $3,000.   Due motions for the direction of a verdict for defendant, for judgment notwithstanding the verdict on the undisputed evidence, and for the reversal of the answers to the several questions, and judgment on the verdict so modified, were duly made and overruled, and judgment rendered for the plaintiff for the damages found, from which the defendant appeals.

For the appellant there was a brief signed by *Roemer & Aarons,* attorneys, and a separate brief by *Nash & Nash,* of counsel, and the cause was argued orally by *L. J. Nash* and *J. M. Niven.*

For the respondent there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

DODGE, J. The principal contention on appellant's part is that contributory negligence so conclusively appears from the evidence that the trial court should have directed a verdict in defendant's favor. Hardly any rule is more firmly established by judicial decision in this state than that an employee assumes the risks of those perils which obviously attend the conduct of his work with its usual accompaniments and incidents, and that a jury is not at liberty to credit his statement of ignorance of those facts which are obvious to his senses or of the perils which are at once apparent upon the application of such reason and intelligence as he has. *Hazen v. West Superior L. Co.* 91 Wis. 208, 64 N. W. 857; *Roth v. S. E. Barrett Mfg. Co.* 96 Wis. 615, 71 N. W. 1034; *Larson v. Knapp & Stout Co. Co.* 98 Wis. 178, 73 N. W. 992; *Bigelow v. Danielson,* 102 Wis. 470, 78 N. W. 599; *Gossens v. Mattoon Mfg. Co.* 104 Wis. 406, 80 N. W. 589; *Helmke v. Thilmany,* 107 Wis. 216, 83 N. W. 360; *Groth v. Thomann,* 110 Wis. 488, 86 N. W. 178; *Upthegrove v. Jones & A. C. Co.* 118 Wis. 673, 96 N. W. 385; *Gardner v. Paine L. Co.* 123 Wis. 338, 101 N. W. 700. Accordingly this rule has been applied in the foregoing cases to charge an employee with knowledge of the existence of a saw or knife when his employment consists in feeding some substance against such saw or knife to be trimmed or cut, and to charge him with apprehension of the likelihood of injury in case any part of his person comes in contact with such saw or knife; also to charge him with knowledge that when substances on which he works are fed into rollers

there is a peril that such rollers will engage his hands or clothing if he permits contact therewith. So it is difficult to avert the conclusion that this plaintiff, when he was employed to press a board against the revolving spindle in order that the edge of said board might be trimmed, was chargeable with knowledge that at the point of trimming there existed a knife, and that if his hand reached the point of contact with such knife it would be injured; probably, too, the proposition is supported that he must have contemplated that in the application of force to that board his hands were liable to make erratic or excessive motions and might thereby be unintentionally brought to such point of contact. Indeed, he practically admits a conscious knowledge of all such facts but for the misleading information from his superior to which we shall hereafter advert. So far as the situation is governed by what was merely apparent or inferable it would be hard to distinguish his case from *Hazen v. West Superior L. Co., supra; Roth v. S. E. Barrett Mfg. Co., supra; Larson v. Knapp & Stout Co. Co., supra;* or *Groth v. Thomann, supra.*

This case, however, is claimed by respondent to be distinguished from the cases and the rule above referred to, in that plaintiff was misled by positive statement from his employer into the belief, first, that the knife or knives were not in such a position that his hands, either when upon the board forcing it along, or in any position likely to be reached by slip or other excessive motion, could come in contact with them; and that, by reason of the location of those knives, there did not exist the peril from which he suffered. The question presented is whether his testimony to this state of ignorance is credible. His testimony is that on the only occasion when he was called to work upon this planer he evinced reluctance, having heard that planers were dangerous; that the foreman of the shop then said to him, substantially, "There is no danger; the knives which trim the board are

wholly below its upper surface, and there is no danger of getting your hands in contact with them;" that it was true that the knives then in use were wholly below the surface of the board; that when he was called upon to work at the planer on the occasion of his injury he had no reason to suppose that a different condition existed and that he could not see the position of the knives owing to their very rapid revolution. We cannot reject the undisputed evidence as to the statement in fact made to him, nor do we feel, after due consideration, that we must discredit his statement that, in his ignorance as to the details of the mechanism of the machine, he having never seen it when stationary, he fully believed the accompanying assurance of freedom from danger. The further statement is perhaps the one most assailed, that he did not know that the knives, on the later occasion when injured, extended some three quarters of an inch above the top surface of the board and one half or three quarters of an inch inward from the edge of the board toward his fingers. A study of the appliance shows that, could he have seen this machine when the knives were stationary, with each of them as a separate entity apparent to his sight, these facts must have been known, yet, when we remember that the two knives fitted into the revolving head turned 6,500 times a minute, we think it by no means incredible, as stated, that there was nothing visible outside of the circumference of the three-inch revolving head but a confused bright rim or blur, and that, too, involved in the shavings which the knife cut from the board, so that it was not obvious even to trained observation that the machine was at that time equipped with a knife which did rise above the level of the board and did protrude within its surface. Nor can we say that a jury might not credit his assertion, in view of his limited familiarity with machinery, that he believed the assurance of his foreman that knives revolving below the surface of the board were free from peril to one performing such work as that im-

posed upon him.   It was this positive assurance from one
whom plaintiff might assume to have accurate knowledge,
and which might well serve to divert him from the other-
wise rational inferences, which distinguishes the situation
from those considered in the above-cited cases, and which
we think, and conclude, made it possible for reasonable
minds to differ upon the question whether he so completely
knew or understood the risk that he assumed it, and whether
his act in placing his hands so that an accidental slip might
reach contact with the knives was negligent.   We therefore
do not feel at liberty to set aside the finding of the jury on
those questions.

The finding of defendant's negligence is not seriously at-
tacked and needs little discussion.   If defendant misled
plaintiff into a disbelief in existing perils of which it had
knowledge and then exposed him to them under such delu-
sion of safety, it is of course a much plainer failure of duty
to him than any mere omission of warning or instruction.
Such conduct on defendant's part is, as we have seen, estab-
lished by at least some credible evidence and would suffice
to support the jury's finding of negligence.

Exceptions were reserved to the form of certain questions,
but appellant's counsel, with commendable fairness and can-
dor, requests that no reversal of the judgment be had on
such technical grounds, with the effect merely to impose the
expense of another trial on both parties and with but little
likelihood that the correction of any such error could lead
to a different verdict.   We therefore refrain from discussion
of errors assigned thereon.

*By the Court.*—Judgment affirmed.